## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 04 2017, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Vaughn L. Reid | Curtis T. Hill, Jr. |
| Elkhart, Indiana | Attorney General of Indiana |
| | |
| | Larry D. Allen |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vaughn L. Reid, *Appellant-Defendant,* | August 4, 2017 |
| | Court of Appeals Case No. 20A03-1606-CR-1286 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Evan S. Roberts, Judge |
| | Trial Court Cause No. 20D01-1502-F6-130 |

**Barnes, Judge.**

# Case Summary

[1] Vaughn Reid appeals his conviction for Level 6 felony domestic battery. We affirm.

# Issue

[2] The sole issue before us is whether the trial court committed fundamental error in sustaining the State's objection to hearsay evidence Reid wished to introduce.

# Facts

[3] On December 22, 2014, at around noon, L.F. called her mother, Sara Gonzalez, to say that she was having an argument with Reid. Reid was L.F.'s live-in boyfriend and the father of their one-year-old child. Gonzalez sometimes referred to Reid as L.F.'s "husband," even though they were not married. Tr. p. 156. Foster's actual ex-husband was living in Philadelphia in December 2014.

[4] Gonzalez went to L.F. and Reid's home in Elkhart in response to the call. L.F. let Gonzalez inside the house when she arrived. Gonzalez observed L.F. and Reid arguing and pushing each other; L.F. was pushing Reid away to keep him from hitting her. When Gonzalez told Reid to stop, he said "Get the f*** out of my house." *Id.* at 163. Gonzalez then picked up L.F. and Reid's child and began leaving the house. As L.F. was following Gonzalez out of the house, Reid began hitting her on the face with a plastic clothes hanger, causing

lacerations to L.F.'s face. Gonzalez then called 911 and reported that L.F.'s "husband" had hit her in the face and that she was bleeding. Ex. 201.

[5] The State charged Reid with Level 6 felony domestic battery committed in the presence of a child. L.F. originally gave a statement to police that Reid had battered her. About a month after the offense, L.F. moved back in with Reid, and she did not cooperate with investigators. On June 19, 2015, L.F. wrote a letter to the prosecutor stating that she had falsely accused Reid of battering her. Rather, the letter claimed, another male friend who had spent the night at the home in Reid's absence had battered her. The letter also claimed that Gonzalez arrived at the home shortly after the incident and that L.F. had falsely told her that Reid battered her because she did not want her mother to know she had spent the night with another man.

[6] Reid's jury trial was held on April 13, 2016. L.F. did not testify during trial. However, Gonzalez testified that she witnessed the incident and described it in detail. During cross-examination of Gonzalez, defense counsel asked her, "you recall when [L.F.] told you that this actually didn't happen?" Tr. pp. 205-06. The State objected on hearsay grounds before Gonzalez answered, and during a bench conference, defense counsel referred to L.F.'s written recantation of her accusation of Reid. The trial court asked defense counsel what hearsay exception would allow introduction of L.F.'s recantation, and counsel responded, "At this point I can't think of any so I'll withdraw the question." *Id.* at 206-07. The trial court then instructed the jury to disregard the last question.

The jury found Reid guilty as charged and the trial court convicted and sentenced him accordingly. Reid now appeals.[1]

## Analysis

[7] Reid's sole argument is that the trial court improperly prohibited him from questioning Gonzalez about L.F.'s recantation. Generally, we will reverse a conviction based on an erroneous evidentiary ruling only if the trial court has abused its discretion and the error was prejudicial. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). "A trial court abuses its discretion when its ruling is either clearly against the logic and effect of the facts and circumstances before the court, or when the court misinterprets the law." *Id.* The erroneous exclusion of evidence does not require reversal of a conviction if the error was sufficiently minor so as not to affect the defendant's substantial rights. *Rohr v. State*, 866 N.E.2d 242, 246 (Ind. 2007).

[8] The State notes that Reid's attorney expressly withdrew questioning about L.F.'s recantation when asked by the trial court to explain why that questioning

---

[1] After briefing was completed in this case, we granted Reid's appointed attorney's motion to withdraw his appearance, which was made at Reid's request. Reid subsequently filed conflicting representations to this court, one of which stated he wanted to proceed pro se, and one of which stated he did not want to proceed pro se and wanted to be appointed counsel from "down state." Reid also filed a motion to "Stop Briefing and Appendix." By separate order we have denied Reid's motions for appointment of a new attorney and to suspend consideration of this appeal on the authority of *Denton v. State*, 455 N.E.2d 905, 909-10 (Ind. 1983) (denying defendant's motion to withdraw brief filed by appointed attorney and to replace it with pro se brief, observing that granting motion "would permit parties to repudiate at will their express request for appointment of appellate counsel" and "would result in substantial disruption of the administration of the courts"). We also note that, although an indigent defendant has a right to an attorney, he or she has no right to court-appointed counsel of his or her choice. *Moore v. State*, 557 N.E.2d 665, 668 (Ind. 1990).

would not elicit inadmissible hearsay. Reid attempts to come up with such explanations on appeal. However, a defendant cannot raise new issues or arguments on appeal that were not presented to the trial court. *Hitch v. State*, 51 N.E.3d 216, 219 (Ind. 2016). Thus, the issue is waived, and Reid can obtain reversal of his conviction only if he can establish fundamental error. *See id.* The fundamental error rule allows for reversal of a conviction only under extremely narrow circumstances, i.e. when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id.*

[9] Indiana Evidence Rule 801(c) defines "hearsay" as a statement that "(1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Reid contends evidence regarding L.F.'s recantation would not have been introduced for the truth of the matter asserted, but either to show Gonzalez's bias, prejudice, or interest for or against a party, or to impeach Gonzalez's credibility.

[10] A prior inconsistent statement used to impeach a witness is not hearsay if the declarant testifies and is subject to cross-examination about the prior statement, and the prior statement was given under penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. Ind. Evidence Rule 801(d)(1)(A). Additionally, the witness must be given an opportunity to explain or deny the prior inconsistent statement. Ind. Evid. R. 613(b). Clearly, it is evident that in order to use a prior inconsistent statement as impeachment of a witness, the statement must be the witness's own statement. Reid cites no authority for the

proposition that one witness's testimony can be "impeached" by out-of-court statements made by a different person.

[11] As for the bias issue, "Evidence that a witness has a bias, prejudice, or interest for or against any party may be used to attack the credibility of the witness." Ind. Evid. R. 616. However, Reid fails to explain how L.F.'s recantation shows a bias or prejudice against him on Gonzalez's part. The only way in which it could possibly have done so would be if L.F.'s out-of-court assertion that Reid was not her assailant was found to be true—thus leading to the inference that Gonzalez was lying about the incident because of some improper motive. But, "if to establish a collateral issue the statements must first prove the truth of the matter asserted, it remains hearsay." *Smith v. State*, 721 N.E.2d 213, 218 (Ind. 1999). Reid has failed to establish that he intended to use L.F.'s recantation at trial for any permissible non-hearsay purpose; rather, it appears he wanted to have L.F.'s recantation "testimony" in the record without her having to actually testify and be subject to cross-examination about it.

[12] In any event, the jury was well aware that L.F. did not testify in support of the prosecution, and also was informed that she did not cooperate with investigators. The jury clearly could have, and likely did, infer that L.F. for whatever reason did not want Reid to be found guilty of this offense, as is often the case in domestic violence situations, and yet it found him guilty anyway. Gonzalez's testimony was very clear that she personally witnessed the incident and that Reid, not some other man, was the assailant. In sum, the trial court's

refusal to allow Reid to present evidence of L.F.'s recantation through Gonzalez's cross-examination was not fundamental error.

## Conclusion

[13] The trial court did not commit fundamental error in denying Reid permission to present evidence of L.F.'s out-of-court recantation of her accusation of Reid. We affirm his conviction for Level 6 felony domestic battery.

[14] Affirmed.

Baker, J., and Crone, J., concur.